1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10                                   ----oo0oo----

11

12  BENJAMIN STROMAN,                    CIV. NO. 2:14-524 WBS CKD

13              Plaintiff,               MEMORANDUM AND ORDER RE: MOTION
                                         TO DISMISS
14        v.

15  RON DAVIS; S. CLEMENT; R.
    FLEMING; D. BUNCH; R.
16  QUESADA; and DOES 1-100,

17              Defendants.

18

19                                   ----oo0oo----

20            Plaintiff Benjamin Stroman brought this civil rights

21  action against five employees of Valley State Prison ("VSP")

22  arising out of injuries he allegedly suffered while incarcerated

23  there.  Defendants Ron Davis and R. Quesada now move to dismiss

24  plaintiff's Complaint pursuant to Federal Rule of Civil Procedure

25  12(b)(6) for failure to state a claim upon which relief can be

26  granted.[1]

27  _____

28        [1]   Because oral argument will not be of material
    assistance, the court orders this matter submitted on the briefs.

                                         1

1    I.    Factual & Procedural History

2          On March 10, 2013, plaintiff was allegedly attacked by

3    three inmates at VSP.  (Compl. ¶ 19 (Docket No. 1).)  These

4    inmates bound him to a railing on the top tier of the housing

5    unit and doused him with water.  (Id.)  They then carried

6    plaintiff downstairs into cell #125, which was used as the inmate

7    restroom.  (Id. ¶ 20.)  One of the inmates ran out of cell #125,

8    obtained an ADA chair with wheels and no seat bottom, and brought

9    the chair into the cell.  (Id. ¶ 23.)

10          Plaintiff then alleges that the inmates stripped him

11   naked from the waist down, tied him to the chair, and wheeled him

12   out of cell #125 into the day room.  (Id. ¶ 24.)  The inmates

13   then pushed plaintiff around the day room while yelling

14   homophobic slurs, asking if the other inmates wanted to "take a

15   ride," and inviting other prisoners to "come and get some."  (Id.

16   ¶ 25.)  They then pushed plaintiff to the base of the stairs,

17   poured a white, powdery substance on plaintiff, and rubbed this

18   substance on plaintiff's face and genitals.  (Id. ¶ 26.)

19   Plaintiff alleges that defendant S. Clement, a correctional

20   officer at VSP, yelled that plaintiff should be thankful "because

21   now he was white."  (Id.)

22          After pouring powder on plaintiff, one of the inmates

23   allegedly grabbed what appeared to be a broomstick or plunger and

24   simulated shoving the object into plaintiff's anus.  (Id. ¶ 27.)

25   At this point, another inmate, Mr. Franklin, demanded that the

26   three inmates stop.  (Id. ¶ 28.)  After a brief verbal

27

28   E.D. Cal. L.R. 230(g).

                                2

1    altercation, the inmates released plaintiff from his restraints.

2    (Id.)  Plaintiff alleges that VSP staff, including defendants

3    Clement, R. Fleming, and D. Bunch, watched and laughed as these

4    events transpired.  (Id. ¶ 29.)

5         On March 15, 2013, Lieutenant Quesada allegedly

6    summoned Darryl Geyer, an inmate who witnessed these events, to

7    his office.  (Id. ¶ 30.)  Quesada told Geyer that he was going to

8    write up the three inmates for "excessive horseplay."  (Id.)

9    Quesada allegedly instructed Geyer to falsify his report of the

10   incident to state that the three inmates were merely "running

11   around the dayroom, snapping towels at each other and throwing

12   water on each other."  (Id.)  He specifically told Geyer to omit

13   any details about any inmate being tied up or abused.  (Id.)

14        Plaintiff brought this action against Clement, Bunch,

15   Fleming, Quesada, and Davis, the Warden of VSP.[2]  Plaintiff

16   asserts the following claims against all defendants: (1) a claim

17   under 42 U.S.C. § 1983 premised on violations of the Eighth

18   Amendment; (2) a claim under § 1983 premised on violations of the

19   Equal Protection Clause of the Fourteenth Amendment; (3) a claim

20   for violations of Article I, section 7(a) of the California

21   Constitution; (4) a claim for violations of Article I, section 17

22   of the California Constitution; (5) two claims under section 52.1

23   of the California Civil Code premised on violations of sections

24   7(a) and 17 of the California Constitution; and (6) a claim for

25        [2]  Plaintiff has not yet served Clement, Bunch, or Fleming
26   with the Complaint.  Although plaintiff also named the California
     Department of Corrections and Rehabilitation ("CDCR") as a
27   defendant, the court dismissed plaintiff's claims against CDCR
     with prejudice because those claims are barred by the Eleventh
28   Amendment.  (Docket No. 13.)

1  intentional infliction of emotional distress ("IIED").  Warden

2  Davis and Lieutenant Quesada (collectively "moving defendants")

3  now move to dismiss plaintiff's Complaint for failure to state a

4  claim upon which relief can be granted.  (Docket No. 16.)

5  II.  <u>Discussion</u>

6          On a motion to dismiss under Rule 12(b)(6), the court

7  must accept the allegations in the complaint as true and draw all

8  reasonable inferences in favor of the plaintiff.  <u>Scheuer v.</u>

9  <u>Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds by</u>

10 <u>Davis v. Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S.

11 319, 322 (1972).  To survive a motion to dismiss, a plaintiff

12 must plead "only enough facts to state a claim to relief that is

13 plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.

14 544, 570 (2007).  This "plausibility standard," however, "asks

15 for more than a sheer possibility that a defendant has acted

16 unlawfully," and where a complaint pleads facts that are "merely

17 consistent with a defendant's liability," it "stops short of the

18 line between possibility and plausibility."  <u>Ashcroft v. Iqbal</u>,

19 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 557).

20      A.   <u>42 U.S.C. § 1983</u>

21          In relevant part, § 1983 provides:

22      Every person who, under color of any statute,
        ordinance, regulation, custom, or usage, of any State
23      . . . , subjects, or causes to be subjected, any
        citizen of the United States . . . to the deprivation
24      of any rights, privileges, or immunities secured by
        the Constitution and laws, shall be liable to the
25      party injured in an action at law, suit in equity or
        other proper proceeding for redress . . . .
26

27 42 U.S.C. § 1983.  While § 1983 is not itself a source of

28 substantive rights, it provides a cause of action against any

4

1  person who, under color of state law, deprives an individual of

2  federal constitutional rights or limited federal statutory

3  rights.  Id.; Graham v. Connor, 490 U.S. 386, 393-94 (1989).

4         1.   Claims Against Warden Davis

5         Government officials are not vicariously liable for

6  their subordinates' wrongdoing under § 1983.  See Iqbal, 556 U.S.

7  at 676.  In order to allege a § 1983 claim against a supervisor

8  defendant, a plaintiff must allege either that the supervisor had

9  some "personal involvement in the constitutional deprivation" or

10 that there was "a sufficient causal connection between the

11 supervisor's wrongful conduct and the constitutional violation."

12 Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).

13        Plaintiff alleges that Davis was the Warden of VSP and

14 that he was "responsible for the oversight, maintenance, and

15 policy making decisions of VSP."  (Compl. ¶ 6.)  Plaintiff

16 alleges no other facts suggesting that Warden Davis knew of any

17 other defendant's alleged misconduct, let alone that he had any

18 personal involvement in the events giving rise to this lawsuit.

19 Absent any allegations suggesting that Warden Davis was involved

20 in or sufficiently connected to the misconduct alleged in the

21 Complaint, plaintiff fails to state a § 1983 claim against him.

22 See Starr, 652 F.3d at 1207.  Accordingly, the court must grant

23 Davis's motion to dismiss this claim.

24        2.   Lieutenant Quesada

25        Plaintiff's claims against Lieutenant Quesada turn on

26 the allegation that Quesada covered up other defendants'

27 misconduct by instructing an inmate, Darryl Geyer, to submit a

28 false incident report.  (Compl. ¶ 30.)  "Allegations that

1 officials engaged in a cover-up state a constitutional claim only

2 if the cover-up deprived plaintiff of his right of access to

3 courts by causing him to fail to obtain redress for the

4 constitutional violation that was the subject of the cover-up."

5 Lee v. Whitten, Civ. No. 2:12-2104 GEB KJN P, 2012 WL 4468420, at

6 *4 (E.D. Cal. Sept. 25, 2012) (citing Karim-Pahani v. L.A. Police

7 Dep't, 839 F.2d 621, 625 (9th Cir. 1988)).

8        In order to prevail on a cover-up claim, a plaintiff

9 must offer more than a "mere[] guess" that the defendant's

10 conduct will result in the defeat of his constitutional claims.

11 Delew v. Wagner, 143 F.3d 1219, 1222 (9th Cir. 1998).  Rather, he

12 must allege that the defendant's conduct actually prevented him

13 from litigating that constitutional claim--in other words, that

14 he was "shut out of court" as a result of the defendant's efforts

15 to cover up the constitutional violation.  Christopher v.

16 Harbury, 536 U.S. 403, 415 (2002).

17        Here, plaintiff has not alleged any facts suggesting

18 that Lieutenant Quesada's conduct has prevented him from

19 litigating his constitutional claims against Bunch, Clement, or

20 Fleming; in fact, none of those three defendants have yet been

21 served.  Plaintiff therefore has not alleged, and cannot allege,

22 that he has been denied access to the courts.  See Delew, 143

23 F.3d at 1223.  Accordingly, the court must grant Lieutenant

24 Quesada's motion to dismiss this claim.

25     B.   California Constitution & Civil Code Section 52.1

26        In addition to his constitutional claims under the

27 Eighth and Fourteenth Amendments, plaintiff asserts two claims

28 under the California Constitution: (1) an equal protection claim

6

1    under Article I, section 7(a), and (2) a cruel and unusual

2    punishment clause claim under Article I, section 17.  Plaintiff's

3    claims under the California Constitution are unavailing, however,

4    because neither provision creates a private right of action.  See

5    Katzberg v. Regents of Univ. of Cal., 29 Cal. 4th 300, 329 (2000)

6    (no private right of action under section 7(a)); Giraldo v. Cal.

7    Dep't of Corr. & Rehab., 168 Cal. App. 4th 231, 256 (1st Dist.

8    2009) (no private right of action under section 17).

9         Although California does not recognize a private right

10   of action under sections 7(a) or 17, it permits plaintiffs to sue

11   for violations of these provisions under section 52.1 of the

12   California Civil Code, which is "the California state law analog

13   to section 1983." Johnson v. Bay Area Rapid Transit Dist., 724

14   F.3d 1159, 1167 (9th Cir. 2013).  However, not all violations of

15   the California Constitution are cognizable under section 52.1.

16   In order to prevail on his claim under section 52.1, a plaintiff

17   must allege not only that the defendant deprived him of an

18   interest protected by the California Constitution, but that he

19   did so using "threats, intimidation, or coercion."  Cal. Civ.

20   Code § 52.1(a); Jones v. Kmart Corp., 17 Cal. 4th 329, 334

21   (1998).

22        As the court has explained, plaintiff has not alleged

23   that Warden Davis was personally involved in any of the events

24   alleged in the complaint, let alone that he ever threatened,

25   intimidated, or coerced plaintiff.  Cal. Civ. Code § 52.1(a).

26   Plaintiff therefore has not stated a claim against Warden Davis

27   under section 52.1.

28        With respect to Lieutenant Quesada, plaintiff alleges

1    only that he instructed another inmate, Geyer, to submit a false

2    incident report.  (Compl. ¶ 30.)  As a preliminary matter, it is

3    not clear that section 52.1 permits a claim premised on coercion

4    directed towards a third party.  See Rodriguez v. City of Fresno,

5    819 F. Supp. 2d 937, 954 (E.D. Cal. 2011) (Ishii, J.) (holding

6    that a section 52.1 claim could not be premised on application of

7    force to a bystander absent a showing of coercion directed

8    towards the plaintiff).  The court need not resolve this

9    question, however, because plaintiff has not alleged any facts

10   suggesting that Lieutenant Quesada coerced or attempted to coerce

11   Geyer into submitting a false incident report and therefore has

12   not stated a section 52.1 claim against Lieutenant Quesada.

13         Accordingly, because plaintiff has not alleged a

14   deprivation of any right by "threats, intimidation, or coercion,"

15   Cal. Civ. Code § 52.1(a), the court must grant the moving

16   defendants' motion to dismiss these claims.

17         C.   Intentional Infliction of Emotional Distress

18         In California, the tort of IIED has three elements:

19   "(1) extreme and outrageous conduct by the defendant with the

20   intention of causing, or reckless disregard of the probability of

21   causing, emotional distress; (2) the plaintiff's suffering severe

22   or extreme emotional distress; and (3) actual and proximate

23   causation of the emotional distress by the defendant's outrageous

24   conduct."  Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009)

25   (citations and internal quotation marks omitted).  "A defendant's

26   conduct is outrageous when it is so extreme as to exceed all

27   bounds of that usually tolerated in a civilized community."  Id.

28   at 1050-51 (citations and internal quotations marks omitted).

1   "[T]he defendant's conduct must be intended to inflict injury or

2   engage in with the realization that injury will result."  Id. at

3   1051 (citations and internal quotation marks omitted).

4          Here, plaintiff does not allege any facts suggesting

5   that Warden Davis or Lieutenant Quesada engaged in extreme or

6   outrageous conduct, let alone any facts suggesting a causal

7   connection between that conduct and any purported emotional

8   distress he suffered.  Rather, this claim consists of a

9   boilerplate, four-sentence recitation of the elements of IIED.

10  (See Compl. ¶ 74-75.)  This is the exact sort of "unadorned, the-

11  defendant-unlawfully-harmed-me accusation" that does not

12  constitute a plausible claim for relief.  Iqbal, 556 U.S. at 678.

13  Plaintiff's Memorandum in Opposition to defendants' Motion to

14  Dismiss does not identify any reason why he states a plausible

15  claim for IIED; in fact, it does not even address this claim.

16  (See Docket No. 17.)  Accordingly, the court must grant moving

17  defendants' motion to dismiss this claim.

18          IT IS THEREFORE ORDERED that moving defendants' motion

19  to dismiss plaintiff's Complaint as against them be, and the same

20  hereby is, GRANTED.

21          Plaintiff may file an amended Complaint within twenty

22  days of the date this Order is signed, if he can do so consistent

23  with this Order.

24  Dated:  August 5, 2014

25  _____

26  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

27

28